OPINION
Plaintiff-appellant, state of Ohio, appeals from the judgment of the Franklin County Municipal Court dismissing two charges of operating a motor vehicle while under the influence of alcohol ("OMVI") for lack of probable cause to arrest defendant-appellee, Craig Gray.
According to the suppression hearing testimony of Trooper Nathan Grose of the Ohio State Highway Patrol, Grose was patrolling at approximately 4:00 a.m. on April 28, 2001, when he observed defendant quickly turn his car around a corner onto Lazelle Road after possibly failing to stop at a stop sign; defendant then made a sharp turn onto Old State Road. Grose followed defendant's car for approximately 2.5 miles, during which defendant's car traveled at 75 m.p.h. in a 45 m.p.h. zone. As defendant's car approached the intersection of Polaris Parkway, Grose observed defendant's car briefly drift by the width of a tire into the left turn lane. Based on the foregoing, Grose initiated a traffic stop of defendant's car.
Grose testified that as he approached the driver's side of defendant's car, he noticed a moderate odor of alcohol on defendant's breath and observed defendant to have bloodshot, glassy eyes. Grose conceded in his testimony that bloodshot eyes are a common result of someone who is tired. Grose attested that during the encounter with defendant, defendant told the trooper he had "a little bit" of alcohol to drink; after his arrest, defendant clarified it was a couple of beers. Grose further testified (1) defendant's speech was fine, (2) defendant had no problems with dexterity or with producing his license, registration, or proof of insurance, and (3) defendant had no problem with walking or steadiness.
Trooper Grose administered three standardized field sobriety tests to defendant: the horizontal gaze nystagmus ("HGN"), the walk-and-turn, and the one-leg-stand. Grose admitted he did not administer the HGN test in accordance with standardized testing procedures. Pursuant to State v. Homan (2000), 89 Ohio St.3d 421, the trial court did not consider the results of that test, and they are not at issue here. The walk-and-turn and one-leg-stand tests undisputedly were administered in accordance with the standardized procedures set forth in the National Highway Traffic Safety Administration's ("NHTSA") DWI Detection and Standardized Field Sobriety Testing, Student Manual (2000) ("NHTSA Manual"), Chapter VIII.
In scoring defendant on the two properly administered field sobriety tests, Grose noted "one clue" regarding defendant's failure to perform the walk-and-turn test and "one clue" regarding the one-leg-stand test. Based on his observations of defendant, defendant's driving, and defendant's performance on the field sobriety tests, Trooper Grose placed defendant under arrest and charged him with the offense of OMVI impaired," in violation of R.C. 4511.19(A)(1). Defendant was then transported to the Perry Township Police Department where he was given a blood-alcohol concentration ("BAC") test that resulted in a measurement of .147 grams by weight of alcohol per 210 liters of deep lung breath. Based on that result, defendant was charged with OMVI "per se," in violation of R.C. 4511.19(A)(3).
In its decision following the suppression hearing, the trial court noted the NHTSA Manual indicates that "two or more clues" are required on either the walk-and-turn or one-leg-stand test to classify a suspect's BAC as above .10. See NHTSA Manual, Chapter VIII-12, and -14, respectively. The court found that Grose did not interpret the tests in strict compliance with the manual's standardized testing procedures because he considered the results of the tests even though defendant demonstrated only one clue for each test. The trial court then stated "[t]he issue is whether the field sobriety test must, in addition to being administered in strict compliance with the Manual, must also be evaluated in strict compliance with the Manual." (Decision, 4.)
The trial court concluded the NHTSA, and the Ohio Supreme Court in Homan, anticipate and require strict compliance with the standardized testing procedures for both the administration and the evaluation of field sobriety tests. Because two clues were not noted in this case for either the walk-and-turn test or the one-leg-stand test as required by the NHTSA Manual, the court determined that the field sobriety test results did not provide reliable evidence that defendant's blood-alcohol level was above the legal limit, and the court accordingly suppressed the field sobriety test results. The court then dismissed the OMVI charges against defendant, concluding that, absent the field sobriety test result evidence, the trooper had insufficient evidence of probable cause to support defendant's arrest for OMVI.
Plaintiff appeals, assigning the following errors:
"I. THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE RESULTS OF THE ONE LEG STAND AND THE WALK AND THE TURN TESTS FOR THE PURPOSES OF MAKING ITS PROBABLE CAUSE DETERMINATION BECAUSE SUCH TESTS WERE ADMINISTERED IN STRICT COMPLIANCE WITH STANDARDIZED TESTING PROCEDURES.
"II. EVEN IF THE COURT DID NOT ERR IN REFUSING TO CONSIDER THE RESULTS OF THE FIELD SOBRIETY TESTS FOR PURPOSES OF PROBABLE CAUSE, THE COURT ERRED TO THE PREJUDICE OF THE STATE IN DETERMINING THAT THERE WAS NO PROBABLE CAUSE TO ARREST APPELLEE FOR OMVI.
In its first assignment of error, plaintiff asserts the trial court erred in concluding that the Ohio Supreme Court's decision in Homan requires the field sobriety tests to be both administered and evaluated in strict compliance with standardized procedures. Plaintiff contends that once a field sobriety test is administered and scored in strict compliance with the standardized testing procedures, Homan does not require law enforcement officials to strictly follow the NHTSA recommendations regarding the evaluation of the test results. Plaintiff argues that, in such circumstances, the field sobriety test results should be admissible and weighed as a factor in the court's determination of probable cause to arrest.
Standardized field sobriety tests, "when administered in a standardized manner, [are] a highly accurate and reliable battery of tests for distinguishing BACs above 0.10[.]" NHTSA Manual, VIII-1. Recognizing that even minor deviations from standardized procedures can severely bias the results, the Ohio Supreme Court has held that "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Homan at 424. In accord, State v. Kolesar (Sept. 20, 2001), Franklin App. No. 00AP-1435. Although the court's focus in Homan is on the administration of field sobriety tests, the rationale of the court's holding applies also to the evaluation of field sobriety tests.
According to the NHTSA, the field sobriety tests are an effective means of detecting legal intoxication "only when" the standardized criteria are employed not only to administer the test in the prescribed, standardized manner, but also to interpret an individual's performance on a test. NHTSA Manual, VIII-3; Homan at 424-425. The Supreme Court in Homan specifically explained:
"When field sobriety testing is conducted in a manner that departs from established methods and procedures, the results are inherently unreliable. In an extensive study, the National Highway Traffic Safety Administration ("NHTSA") evaluated field sobriety tests in terms of their utility in determining whether a subject's blood-alcohol concentration is below or above the legal limit. The NHTSA concluded that field sobriety tests are an effective means of detecting legal intoxication `only when: the tests are administered in the prescribed, standardized manner[,] * * * the standardized clues are used to assess the suspect's performance [, and] * * * the * * * standardized criteria are employed to interpret that performance.' National Highway Traffic Safety Adm., U.S. Dept. of Transp., HS 178 R2/00, DWI Detection and Standardized Field Sobriety Testing, Student Manual (2000), at VIII-3. According to the NHTSA, `[i]f any one of the standardized field sobriety test elements is changed, the validity is compromised.' " (Emphasis added.) Id. at 424-425.
Thus, according to Homan and the NHTSA, the results of a field sobriety test are not a valid indicator of illegal intoxication unless the tests are administered in the prescribed, standardized manner and the standardized criteria are followed in interpreting an individual's performance on the test. Id. Accordingly, an evaluation or interpretation of field sobriety test results must strictly comply with standardized criteria for interpreting the test results in order for the test results to be admissible as evidence of probable cause to arrest. The NHTSA Manual sets forth such standardized procedures and criteria for both the administration and the interpretation of the field sobriety tests. See NHTSA Manual, VIII-11, -14.
As to the subject field sobriety tests, the NHTSA Manual notes eight validated clues for the walk-and-turn test. The manual states that if an individual exhibits "two or more clues on this test" the individual's BAC is to be classified as above .10. NHTSA Manual, VIII-11, -12. The NHTSA Manual notes four validated clues for the one-leg-stand test, and "there is a good chance the BAC is above 0.10" if an individual shows "two or more clues" on the test. NHTSA Manual, VIII-13, -14. The manual does not state that "one clue" on either test is a reliable indicator of a BAC above .10. Commenting on the use of field sobriety test results to establish probable cause, the manual states "[t]he number of clues is important to the police officer in the field because it helps determine whether there is probable cause to arrest." NHTSA Manual, VIII-15.
According to the foregoing, the walk-and-turn and one-leg-stand tests are valid indicators a person has a BAC over .10 only when the standardized criteria of "two or more" clues are noted for each test. Because only "one clue" was noted in the present case for defendant's performance on each test, the test results did not comply with the standardized interpretation criteria and thus would not be an effective means of detecting whether defendant was legally intoxicated. Homan at 424-425; NHTSA Manual, VIII-3, -11, -14. Accordingly, the trial court properly suppressed the test results and did not consider them as a factor in determining whether Grose had probable cause to arrest defendant for OMVI. Plaintiff's first assignment of error is overruled.
In its second assignment of error, plaintiff asserts that, even if the court did not err in refusing to consider the results of the field sobriety tests, the remaining evidence was sufficient to establish probable cause to arrest defendant for OMVI based on the totality of the circumstances.
In Homan, the Supreme Court explained that to determine whether a law enforcement officer had probable cause to arrest a suspect for driving under the influence, a court is to consider whether, at the moment of arrest, the officer had sufficient information derived from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving under the influence. In making this determination, the court examines the "totality" of facts and circumstances leading to the arrest. Homan at 427; Kolesar, supra. Probable cause to arrest does not have to be based, in whole or in part, upon a suspect's poor performance on one or more of the field sobriety tests. Rather, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of strict compliance." Homan at 427.
Plaintiff asserts the facts in this case are similar to those in Homan, in which the Supreme Court concluded there was probable cause to arrest the defendant for driving under the influence. Plaintiff urges this court to reach a similar conclusion. The facts in Homan, however, are distinguishable from those in the present case and, accordingly, we reach a different result from that reached in Homan.
In Homan, a trooper testified: (1) the defendant drove in an erratic manner, weaving and twice driving left of center, (2) the defendant had a "strong" odor of alcohol, (3) the defendant's eyes were "red and glassy," and (4) the defendant admitted consuming three beers. Id. at 421-422, 427. In its review, the Supreme Court concluded the totality of these facts and circumstances "amply" supported the trooper's decision to arrest the defendant for driving under the influence. Id. at 427.
Here, although defendant was speeding, his driving was not observed to be erratic except for a brief cross over the center line into a left turn lane as the car proceeded through an intersection. The trooper was uncertain whether defendant failed to stop his car at a stop sign. Defendant had a moderate, not a strong, odor of alcohol, and before his arrest, defendant admitted to drinking only "a little bit" of alcohol. The trooper acknowledged that, although defendant's eyes were bloodshot, such a condition sometimes indicates fatigue. In that regard, it is noteworthy the arrest occurred at 4:07 a.m. The trooper testified that defendant's speech, dexterity, walk, and steadiness were all fine. Finding these facts to be similar to those in State v. Taylor (1981),3 Ohio App.3d 197; State v. Finch (1985), 24 Ohio App.3d 38; and Kolesar, the trial court concluded the evidence was insufficient to support a finding of probable cause to place defendant under arrest for OMVI.
In Taylor, the court there noted that speeding and an odor of alcohol that was not determined to be strong or pervasive were insufficient, without more, to furnish probable cause to arrest the defendant for driving under the influence. In Finch, the court noted that merely appearing to be too drunk to drive, is not, without evidence of unsafe or erratic driving or impaired motor coordination, sufficient to constitute probable cause to arrest. In Kolesar, this court more recently held the state produced insufficient evidence of probable cause to arrest where evidence of impairment in operating a vehicle was lacking, the suspect had a strong odor of alcohol, the suspect admitted drinking two or three beers, the suspect's speech was slurred, the suspect used her vehicle for support upon exiting, the suspect was unable to recite the alphabet, and the suspect had red and bloodshot eyes; the officer attributed the redness to emotional outbursts by the suspect while she attempted to complete field sobriety tests.
"In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." State v. Curry (1994), 95 Ohio App.3d 93,96. Thus, a reviewing court is bound to accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. State v. Claytor (1993),85 Ohio App.3d 623, 627. Nevertheless, without deference to the trial court's conclusion, the reviewing court must independently determine as a matter of law whether the trial court's decision meets the appropriate legal standard. State v. Turner (Dec. 21, 2000), Franklin App. No. 00AP-248.
Competent, credible evidence supported the trial court's findings in this case. Moreover, the totality of the facts and circumstances leading to defendant's arrest, absent the results of the field sobriety tests, did not rise to a level to establish probable cause for defendant's arrest. Although defendant was speeding and his car briefly passed left of center one time, his driving was not erratic, his motor coordination skills did not appear to be impaired, he had only a moderate odor of alcohol, and his bloodshot eyes could be attributed to fatigue due to the early morning hour. Plaintiff's second assignment of error is overruled.
Having overruled plaintiff's two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
TYACK, P.J., and DESHLER, J., concur.